JANETTE K. BRIMMER (WSB #41271)
(*Pro Hac Vice Admission pending*)
ASHLEY N. BENNETT (WSB #53748)
(*Pro Hac Vice Admission pending*)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104-1711
(206) 343-7340 | Phone
jbrimmer@earthjustice.org
abennett@earthjustice.org
*Attorneys for Plaintiff Upper Missouri Waterkeeper*

JENNY K. HARBINE (MSB #8481)
Earthjustice
313 East Main Street
Bozeman, MT  59715-6242
(406) 586-9699 | Phone
(406) 586-9695 | Fax
jharbine@earthjustice.org
*Local Counsel for Plaintiff Upper Missouri Waterkeeper*

UNITED STATES DISTRICT COURT
DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| UPPER MISSOURI WATERKEEPER, | ) No.  CV-20-27-GF-BMM |
| | ) |
| Plaintiff, | ) COMPLAINT FOR |
| | ) DECLARATORY AND |
| v. | ) INJUNCTIVE RELIEF |
| | ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ANDREW WHEELER, Administrator, United States Environmental Protection Agency, | ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

## INTRODUCTION

1. Plaintiff Upper Missouri Waterkeeper ("Waterkeeper") brings this action to address the failure of the U.S. Environmental Protection Agency ("EPA") to comply with Clean Water Act requirements for approval of state submissions of water quality standards for Montana waters. EPA's February 24, 2020 approval of ARM §§ 17.30.619(2) and 17.30.715(4) – provisions that void, effectively negate, or repeal nutrient water quality standards for Montana – violates the Clean Water Act, is arbitrary, capricious, contrary to the record, and an abuse of discretion under the Administrative Procedure Act.

2. As set forth in detail below, Waterkeeper asks that EPA's approval of ARM §§ 17.30.619(2) and 17.30.715(4) be set aside.

## PARTIES AND STANDING

3. Plaintiff Upper Missouri Waterkeeper, Inc. ("Waterkeeper") is a non-profit membership organization dedicated exclusively to protecting and improving the ecological and aesthetic qualities of Southwest and West-central Montana's Upper Missouri River Basin. Waterkeeper is located at 24 S. Wilson Ave., Suite 6-7, Bozeman, Montana 59715. As part of its mission, Waterkeeper engages in policy, science and rulemaking related to Montana's implementation of its Clean Water Act duties and citizens' guarantee to a clean and healthful environment under our constitution.

4. Defendant United States Environmental Protection Agency ("EPA") is an agency of the United States charged with overseeing and approving or disapproving state water quality standards pursuant to 33 U.S.C. § 1313 to protect the public health or welfare, enhance the quality of water and serve the purposes of the Clean Water Act.

5. Defendant Andrew Wheeler, the chief officer and Administrator of EPA, is the federal official ultimately responsible for EPA's administration and implementation of its legal duties. Administrator Wheeler is sued in his official capacity.

6. Waterkeeper's donors, supporters, and members reside on or near, or recreate on the waters of Montana, including waters affected by the nutrient water quality standards. EPA's approval of ARM §§ 17.30.619(2) and 17.30.715(4) which void or effectively repeal the nutrient water quality standards of Circular 12-A, injures Waterkeeper and its members by allowing Montana to promulgate and implement water quality standards and issue National Pollutant Discharge Elimination System ("NPDES") permits that are not protective of designated uses—uses to which Waterkeeper's members put Montana's waters.

7. Nutrient pollution causes and contributes to algal, bacterial and plant growth in waters which, in turn, depletes oxygen to the detriment of fish and wildlife. This can create toxic conditions for wildlife and humans, and causes

severe habitat and aesthetic degradation in affected waters. Waterkeeper members who recreate and/or fish on Montana's waters are adversely affected by nutrient pollution and the algal, bacterial and plant impacts it causes when it adversely affects or kills fish and invertebrate populations through oxygen depletion or habitat alteration; when toxic algal blooms can affect humans, pets, and wildlife that come into contact with that water; and when nutrient-fed algal and plant blooms create unsightly and disruptive or unbalanced conditions in waters of the state.

8. Waterkeeper has representational standing to bring this action. EPA's approval of ARM §§ 17.30.619(2) and 17.30.715(4) has an adverse impact on Waterkeeper and Waterkeeper's supporters' ability to use and enjoy water bodies in Montana, and has injured the recreational, environmental, aesthetic, and/or other interests of Waterkeeper and its members. These injuries are traceable to EPA's erroneous approval and are capable of redress by action of this Court.

9. Waterkeeper has organizational standing to bring this action. Waterkeeper has been actively engaged in a variety of educational and advocacy efforts to improve water quality standards and regulation in the state of Montana. EPA's approval of ARM §§ 17.30.619(2) and 17.30.715(4) adversely affect Waterkeeper's clean water advocacy efforts. These injuries are fairly-traceable to EPA's violations and are redressable by the Court.

## JURISDICTION AND VENUE

10. Waterkeeper brings this action for review pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq*.

11. This court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 5 U.S.C. §§ 701-706 (Administrative Procedure Act).

12. Venue is proper in this Court and this Division under 28 U.S.C. § 1391(e) because Waterkeeper and its members reside in the District of Montana, Waterkeeper maintains its office in Bozeman, and Waterkeeper's mission and purpose is the protection of the Upper Missouri River. Because the bulk of the Missouri River watershed is in the portion of the state and counties where venue is proper in Great Falls, Montana, this case is filed in the Great Falls Division of U.S. District Court, District of Montana.

## LEGAL AND FACTUAL BACKGROUND
## NUTRIENT POLLUTANTS

13. Nutrient pollutants are phosphorus and nitrogen. Nutrient pollutants act as fertilizer in water, causing and contributing to the growth of harmful algal blooms, bacteria and excessive plant growth. These algal blooms, bacteria, and plant growth, in turn, cause and increase turbidity in water, cause and contribute to reductions in dissolved oxygen, and for certain types of algae, can produce toxins. These problems all adversely affect fish, aquatic invertebrates, wildlife and human

health and recreation. EPA, *Nutrient Criteria Technical Guidance Manual: Rivers and Streams* at 3-5 (July 2000). Nutrient pollution impairs designated uses by impairing fishing, impairing wildlife and impairing human health and contact with waters affected.

14. Nutrient pollutants can cause damage downstream from the source, sometimes for great distances (for example hypoxia in the Gulf of Mexico is an oxygen depletion problem caused by nutrient pollutants in the extended Mississippi River watershed), and can accumulate in aquatic systems by attaching to sediments, causing algal blooms to increase and recur when sediments are remobilized. This in turn causes new or repeated water quality problems even after the original source of pollution is reduced or removed. Nutrients are sometimes referred to as "conservative" or "cumulative" pollutants because of their ability to damage waters away from a source and for an extended period of time.

15. In 2000, EPA, in recognition of the problems caused by nutrient pollution, issued direction and guidance to the states to develop numeric nutrient criteria to protect designated uses in all waters. EPA, Nutrient Criteria Development; Notice of Nutrient Criteria Technical Guidance Manual: Rivers and Streams, 65 Fed. Reg. 46167-46169 (July 27, 2000). EPA directed the states to develop standards by 2003, and provided states with guidance on standards

development and a set of standards, developed by ecoregion, that states could adopt if they chose not to develop their own or until they developed their own. *Id.*

16. The state of Montana has long acknowledged that nitrogen and phosphorus are two of the most problematic types of pollution in Montana's waters. In fact, excess nitrogen and phosphorus account for nearly twenty percent of all stream miles impaired by all forms of water pollution in Montana. Unhealthy nitrogen and phosphorus levels, in combination with the challenges presented by chronic dewatering and evolving precipitation and land use patterns, are cumulatively degrading dozens of waterways across Montana, rendering them unfishable, unswimmable, and/or unsuitable for recreation.

## CLEAN WATER ACT REQUIREMENTS FOR DEVELOPMENT AND PROMULGATION OF WATER QUALITY STANDARDS

17. The Clean Water Act requires states to set water quality standards necessary to achieve the requirements of the Clean Water Act: to restore and maintain the chemical, physical, and biological integrity of the Nation's waters, including the protection and propagation of fish and shellfish, and to prohibit pollution to water in toxic amounts. 33 U.S.C. §§ 1251(a) and 1313(c)(2)(A).

18. Required parts of a state's water quality standards are use designations and water quality criteria necessary to protect those designated uses. *Id.* and 40 C.F.R. §§ 131.6 and 131.10. Water quality criteria must ensure that designated uses of waters such as protection of fish and wildlife, consumption of fish, and

recreational uses such as fishing, swimming and boating are achieved and maintained. *Id.* and 40 C.F.R. §§ 131.2 and 131.3(i). Criteria must protect the most sensitive use. 40 C.F.R. § 131.11(a).

19. Whenever a state adopts a new or revised water quality standard, it must submit it to the EPA for review and disapproval or approval. 33 U.S.C. § 1313(c)(2). The standard becomes applicable only if EPA determines that the standard meets all requirements of the Clean Water Act, including that criteria are adequate to protect designated uses and are based on sound scientific rationale. 33 U.S.C. § 1313(c)(3) and 40 C.F.R. § 131.11(a).

20. Montana promulgated numeric water quality criteria for phosphorus and nitrogen (nutrient pollutants), based on years of scientific analysis and development, including EPA's Ecoregional Nutrient Criteria. Nutrient Criteria Development; Notice of Ecoregional Nutrient Criteria, 68 Fed. Reg. 557-560 (Jan. 6, 2003).

21. Montana found - and EPA ultimately agreed - that the numeric nutrient water quality criteria adopted are necessary to protect the designated uses of Montana's wadeable streams and certain additional specified waters. Montana Dep't of Environmental Quality Department Circular DEQ-12A ("Circular 12-A"). Montana's nutrient water quality criteria for wadeable streams provide that phosphorus shall not exceed 25 micrograms (µ) per liter (L) to as high as 150 µ/L

depending on the ecoregion (with 25 µ/L being the most common and widespread.) For nitrogen, the standard varies from 275 µ/L to 1300 µ/L, again depending on the ecoregion. Table 12A-1, Circular 12-A.

22. Montana's nutrient water quality criteria, set forth above, are based upon EPA's original ecoregional criteria guidance documents, on years of sampling and research by Montana Department of Environmental Quality, and on many scientific studies showing the necessary numeric criteria for nutrients in streams adequate to protect aquatic life and designated uses from the adverse effects of nutrient pollution.

23. As required by the Clean Water Act, Montana submitted its numeric nutrient criteria to EPA for review and approval. Based upon the scientific and technical record and based upon EPA's own guidance and research on nutrient pollution, EPA approved Montana's numeric nutrient criteria on February 26, 2015.

24. At the same time that Montana developed and finalized its science-based nutrient water quality criteria, Circular 12-A, Montana developed a variance from the science-based water quality standards for nutrients. Montana Dep't of Environmental Quality Department Circular DEQ-12-B ("Circular 12-B"). The 2015 variance was revised in 2017.

25. Also at the time that Montana developed and finalized its science-based nutrient water quality criteria in Circular 12-A, Montana promulgated ARM §§ 17.30.619(2) and 17.30.715(4) (the "Poison Pill"). The Poison Pill provides:

> If a court of competent jurisdiction declares 75-5-313, MCA, or any portion of that statute invalid, or if the United States Environmental Protection Agency disapproves 75-5-313, MCA, or any portion of that statute, under 30 C.F.R. 131.21, or if rules adopted pursuant to 75-5-313(6) or (7), MCA, expire and general variances are not available, then (1)(e) and all references to DEQ-12A, base numeric nutrient standards and nutrient standards variances in ARM 17.30.201, 17.30.507, 17.30.516, 17.30.602, 17.30.622 through 17.30.629, 17.30.635, 17.30.702, and 17.30.715 *are void*, and the narrative water quality standards contained in ARM 17.30.637 are the standards for total nitrogen and total phosphorus in surface water…"

ARM § 17.30.619(2) (emphasis added), and

> If a court of competent jurisdiction declares 75-5-313, MCA, or any portion of that statute invalid, or if the United States Environmental Protection Agency disapproves 75-5-313, MCA, or any portion of that statute under 30 C.F.R. 131.21, or if rules adopted pursuant to 75-5-313(6) or (7), MCA, expire and general variances are not available, then the significance criteria contained in (1)(g) are the significance criteria for total nitrogen and total phosphorus in surface water.

ARM § 17.30.715(4).

26. As required by the Clean Water Act, Montana submitted its science-based numeric nutrient criteria, with its 12-B variance standard and the Poison Pill, to EPA for review and approval. EPA approved 12-A and 12-B of Montana's numeric nutrient water quality rule standards package on February 26, 2015 and approved, in part, the revised version of the 12-B variance on October 31, 2017.

27. EPA took no action on the Poison Pill, originally submitted with the 12-A nutrient criteria and the 12-B variance in either 2015 or 2017.

28. In orders in March, July, and December of 2019, the District Court for the District of Montana ruled that the revised 12-B variance, approved by EPA on October 31, 2017, was contrary to EPA regulations and contrary to the CWA. Case No. CV-16-52-GF-BMM, Dkt. Nos. 177, 184, and 211. The District Court remanded the matter to the State of Montana and EPA for additional revision of the variance consistent with the regulations and recommendations by Waterkeeper. Order on Remedies, Dkt. 184 at pp. 4 and 6.

29. Montana finalized the court-required revision to the 12-B variance on November 23, 2019 and submitted it to EPA on November 26, 2019.

30. On February 24, 2020, EPA disapproved the revised variance as inconsistent with the Court's Order on Remedies, but simultaneously approved the Poison Pill in ARM §§ 17.30.619(2) and 17.30.715(4), originally submitted to EPA in 2015.

31. Based upon the language of the Poison Pill, it is self-executing, meaning the Circular 12-A numeric nutrient criteria necessary to protect Montana's designated uses is "void" leaving only the generic narrative standards for all waters and all pollutants that predates Circular 12-A.

32. EPA's approval of the Poison Pill does not cite to the record supporting Circular 12A, does not address Montana and EPA's previous findings regarding the need for, and fitness of, Circular 12-A nutrient water quality standards, and does not discuss how and whether the Poison Pill affects or protects the designated uses of Montana waters.

33. EPA's approval of the Poison Pill cites to no new evidence or record of support for its action.

34. EPA's approval of the Poison Pill states only that it is within a state's discretion to insert a poison pill nullification or revocation of water quality standards into those water quality standards.

35. The Administrative Procedure Act ("APA") authorizes courts reviewing agency action to hold unlawful and set aside final agency action, findings and conclusions that are arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with the law. 5 U.S.C. § 706(2)(A). EPA approval of state water quality standards pursuant to the substantive requirements of the CWA are reviewed under this provision of the APA.

FIRST CAUSE OF ACTION—EPA'S APPROVAL OF THE POISON PILL IS CONTRARY TO LAW; 33 U.S.C. § 1313

36. Montana developed numeric nutrient water quality standards for wadeable streams and specific river reaches, finding that the particular numeric

nutrient criteria set forth in Table 12A-1 of Department Circular DEQ-12A for nitrogen and phosphorus were supported by a sound scientific rationale and necessary to protecting designated uses of Montana waterways.

37. At the same time, based almost solely on cost, Montana developed a variance, Circular DEQ-12-B, which the District Court ultimately found contrary to applicable regulations and law.

38. Also at the same time, Montana promulgated and included the Poison Pill with its nutrient water quality standards providing that the 12-A numeric nutrient water quality standard is void if a court declares the variance in Circular 12-B invalid or if EPA failed to approve the variance in Circular 12-B.

39. The Clean Water Act requires water quality standards to fully protect designated uses.

40. EPA regulation also requires water quality criteria to fully protect designated uses, to protect the most sensitive uses and to be based on sound scientific rationale.

41. EPA's approval of Montana's Poison Pill is contrary to the Clean Water Act in that it voids and negates the science-based nutrient water quality standard that is necessary to protect designated uses of Montana waters.

42. EPA's violation has caused, and will continue to cause, direct injury to the recreational, environmental, aesthetic, and/or other interests of Waterkeeper,

its members, and water users in the state of Montana by failing to protect designated uses in waters of the state from adverse effects of nutrient pollutants.

43.  Based on the foregoing, and 5 U.S.C. § 706(2)(A), Waterkeeper is entitled to an order vacating EPA's approval of Montana's Poison Pill.

## SECOND CAUSE OF ACTION—EPA APPROVAL OF THE POISON PILL IS CONTRARY TO THE EVIDENCE AND ARBITRARY AND CAPRICIOUS

44.  Montana developed numeric nutrient water quality standards for wadeable streams and specific river reaches, finding that the numeric nutrient water quality standards in Montana's Department Circular DEQ-12A are based on sound scientific rationale, are necessary to support and protect designated uses and to meet the requirements of the CWA.

45.  Contrary to the entirety of the record demonstrating the necessity of the 12-A numeric nutrient water quality standards in protecting designated uses in Montana waterways, EPA approved the Poison Pill which voids those standards.

46.  EPA provides no explanation or record-based rationale, much less a sound scientific rationale, for approving the Poison Pill other than stating that it is a state's prerogative to use a poison pill mechanism to void otherwise necessary water quality standards.

47.  EPA's approval of the Poison Pill is contrary to the entirety of the record and is arbitrary, capricious, and an abuse of discretion.

48. Based on the foregoing, and 5 U.S.C. § 706(2)(A), Plaintiffs are entitled to an order vacating EPA's approval of the Poison Pill.

## REQUEST FOR RELIEF

Based on the foregoing, Upper Missouri Waterkeeper requests the following relief:

1. A declaration that EPA acted in violation of the Clean Water Act and applicable regulation in approving Montana's Poison Pill, ARM §§ 17.30.619(2) and 17.30.715(4);

2. A declaration that EPA's approval of Montana's Poison Pill, ARM §§ 17.30.619(2) and 17.30.715(4), is arbitrary and capricious and an abuse of discretion;

3. Vacatur of EPA's approval of Montana's Poison Pill, ARM §§ 17.30.619(2) and 17.30.715(4);

4. An award of Upper Missouri Waterkeeper's costs and attorneys' fees as determined appropriate under the Equal Access to Justice Act; and

5. Such other and further relief as the Court deems just and equitable.

Dated: March 31, 2020.

Respectfully submitted,

*s/Jenny K. Harbine*
JENNY K. HARBINE (MSB #8481)
Earthjustice
313 East Main Street
Bozeman, MT  59715-6242

(406) 586-9699 | Phone
(406) 586-9695 | Fax
jharbine@earthjustice.org
*Local Counsel for Plaintiff Upper Missouri Waterkeeper*


*s/Janette K. Brimmer*
JANETTE K. BRIMMER (WSB #41271)
 (*Pro Hac Vice Admission pending)*
ASHLEY N. BENNETT (WSB #53748)
(*Pro Hac Vice Admission pending*)
Earthjustice
810 Third Avenue, Suite 610
Seattle, WA  98104-1711
(206) 343-7340 | Phone
jbrimmer@earthjustice.org
abennett@earthjustice.org
*Attorneys for Plaintiff Upper Missouri Waterkeeper*