KURT R. MOSER
Montana Special Assistant
Attorney General
Montana Department of
Environmental Quality
1520 E. 6th Ave
Helena, MT 59620
(406) 444-4009
kmoser2@mt.gov

*Attorney for Applicant*
*Intervenor-Defendant*
*State of Montana*



**FILED**

JUN 0 5 2020

Clerk, U.S District Court
District Of Montana
Great Falls

# UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| UPPER MISSOURI WATERKEEPER, | Case No. 4:20-cv-00027-BMM |
| Plaintiff, | |
| v. | BRIEF IN SUPPORT OF STATE OF MONTANA, DEPARTMENT OF ENVIRONMENTAL QUALITY'S UNOPPOSED MOTION TO INTERVENE AS DEFENDANT |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ANDREW WHEELER, Administrator, United States Environmental Protection Agency, | |
| Defendants. | |

## **INTRODUCTION**

Applicant for Intervention, State of Montana, Department of Environmental Quality, files this Brief in support of its unopposed motion to intervene, pursuant to Rule 24, Federal Rules of Civil Procedure, as Intervenor-Defendant. Montana,

through its regulatory agency the Montana Department of Environmental Quality ("DEQ"), exercises regulatory authority over Montana's waters and implements the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. § 1251 *et seq.*, in cooperative partnership with the United States Environmental Protection Agency ("EPA"). DEQ administers the Montana Water Quality Act at Title 75, Chapter 5, Montana Code Annotated ("MCA"). *See* Mont. Code Ann. § 75-5-211 (2019).

Montana enacted, and EPA approved, administrative rules containing non-severability provisions. *See* Admin. R. Mont. 17.30.619(2) and 17.30.715(4). These rules were adopted following the State's formal rulemaking process and were adopted under the authority of the Montana Water Quality Act. Plaintiff seeks to vacate EPA's approval of these rules. *See* Complaint for Declaratory and Injunctive Relief 15 (March 31, 2020), (Doc.1). A judgment granting the relief requested would prevent Montana's water quality standards rules from being applicable under the Clean Water Act. Montana is entitled to intervene because it has a unique interest in the subject matter of the case, its ability to protect that interest would be impaired absent party status entitling it to appeal an adverse decision, and it is the only entity able to adequately represent the interests of the State.

Alternatively, Montana should be granted permissive intervention as its interest in defending its water quality standards rules is specifically recognized as a protectable interest by Rule 24(b)(2), Fed. R. Civ. P.

## ARGUMENT

### I.     Montana is entitled to Intervene under Rule 24(a), Fed. R. Civ. P.

An applicant seeking to intervene as a matter of right must meet four elements: (1) the application must be timely; (2) the applicant must claim a "significant protectable interest" relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may impair or impede its ability to protect that interest; and (4) "'the existing parties may not adequately represent the applicant's interest.'" *Citizens for Balanced Use v. Mont. Wilderness Assn.,* 647 F.3d 893, 897 (9th Cir. 2011) (citing *Prete v. Bradbury,* 438 F.3d 949, 954 (9th Cir. 2006)). Although the applicant bears the burden of proof on the four elements, the Ninth Circuit broadly construes the requirements in favor of intervention. *Id.* Furthermore, a court's review is to be driven by practical considerations, as opposed to technical distinctions. *Southwest Ctr. for Biological Diversity v. Berg,* 268 F.3d 810, 818 (9th Cir. 2001).

Montana meets the standards for intervention as a matter of right. As a threshold matter, this motion is timely. The test for timeliness requires examination of the stage of proceedings in which the applicant seeks to intervene, the possible

prejudice to existing parties, and the reasons for any delay in moving to intervene, if any delay be shown. *United States v. Alisal Water Corp.*, 370 F.3d 915, 921 (9th Cir. 2004). EPA's Answer was filed today. (Doc. 21). Furthermore, there is no prejudice to any party resulting from the timing of Montana's motion. Plaintiff's statement that it does not oppose Montana's intervention and Defendants' statement that they do not oppose Montana's intervention acknowledge that the motion presents no potential to prejudice their interests or otherwise hinder the judicial process herein.

Regarding the significant protectable interest factor, an applicant has such an interest if it demonstrates an interest protected by some law and a relationship between that interest and the subject matter of the litigation. *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006) (citation omitted). The Clean Water Act established a cooperative relationship between the states and EPA in acting to improve the health of all waters in which the states exercise significant discretion. *Arkansas v. Oklahoma*, 503 U.S. 91, 101 (1992). Montana, in exercising its state role, adopted the challenged rules on July 25, 2014. 15 Mont. Admin. Reg. 1815 (Aug. 7, 2014). EPA approved Admin. R. Mont. 17.30.619(2) and 17.30.715(4) on February 24, 2020. While EPA plays an important role in the approval of state water quality standards, courts have nonetheless recognized that states have the primary role in establishing water quality standards under Section

303 of the Clean Water Act. *City of Albuquerque v. Browner,* 97 F.3d 415, 425 (10th Cir. 1996) (citing *Nat. Res. Def. Council, Inc. v. EPA,* 16 F.3d 1395, 1401 (4th Cir. 1993)). This is an action challenging EPA's approval, under 33 U.S.C. § 1313, of Montana's water quality standards.  Plaintiff seeks to vacate EPA's approval of the non-severability provisions at Admin. R. Mont. 17.30.619(2) and Admin. R. Mont. 17.30.715(4), which would prevent these rules from being considered applicable under the Clean Water Act.

Because of EPA's February 24, 2020 disapproval of Montana's general nutrient standards variance and Montana's self-executing non-severability provisions, the narrative nutrient standards found at Admin. R. Mont. 17.30.637 and the nondegradation rule at Admin. R. Mont. 17.30.715(1)(h) are now effective for state waters once subject to the numeric nutrient standards at DEQ Circular-12A and the nonsignificant criteria at Admin. R. Mont. 17.30.715((1)(f).   Montana has the primary role to ensure that pollutants discharged into state waters do not violate the now effective requirements.  Montana clearly has a unique and significantly protectable interest in the subject matter of the action.  Not only would Montana's adopted rules be ineffective for Clean Water Act purposes should Plaintiff obtain the relief sought, but enforcement of the standards in Montana, whatever they are, falls within Montana's jurisdiction, and so Montana has a unique interest in this case.  This unique interest is established by law and is

the subject matter of the present litigation. Montana's right to establish and enforce its water quality standards is directly at issue as well as its interests as a sovereign over its water resources.  Furthermore, Montana has primacy to implement the discharge permitting program pursuant to Section 402 of the Clean Water Act, 33 U.S.C. § 1342.  Montana implements water quality standards through its discharge permitting program, along with related Clean Water Act requirements. *See* Mont. Admin. R. 17.30.1301.

Montana is also clearly situated such that the disposition of the action may impair or impede its ability to protect its jurisdiction under state law, including its ability to carry out the State's responsibilities under the Clean Water Act. Only Montana can represent the interests of the State and thereby fulfill its principal role in the water quality standards adoption process. *See Pennaco Energy, Inc. v. EPA,* 692 F. Supp. 2d 1297, 1309 (D. Wyo. 2009) (describing EPA's role in water quality standards adoption as "limited" in contrast to states). EPA has an interest and role under the Clean Water Act distinct from Montana; and, while it is presumed EPA will adequately represent federal interests, Montana maintains an important constitutional role as a state to maintain and exercise its jurisdiction over its waters. Montana enacted its water quality standards under valid state laws and is entitled to defend them, including the regulatory certainty provided thereby.

As a practical matter, if Montana is not a party hereto, it cannot petition for rehearing and/or appeal any adverse decision impairing its standards.  Whether the EPA would vigorously defend any adverse ruling, or seek to settle and waive the right to appeal cannot be known at this time. Montana is entitled to intervene at this time to protect against that contingency, as well as the possibility that EPA might defend on different grounds, or only partially. Though Montana could alternatively participate as an amicus, such status is insufficient protection as it provides no right to seek a rehearing, *Day v. Apoliona*, 505 F.3d 963, 965 (9th Cir. 2007), or appeal, *United States v. City of Los Angeles,* 288 F.3d 391, 400 (9th Cir. 2002).  It is Montana which will suffer the regulatory uncertainty and burden of moving forward under some alternate regulation should the current standard be struck down.  Montana unquestionably "would be substantially affected in a practical sense by the determination" herein, *see Citizens for Balanced Use*, 647 F.3d at 898, and is entitled to intervene.

Lastly, EPA cannot adequately represent Montana's interests.  The federal government here defends its own actions and Montana as a separate sovereign has a right to defend hers. The Ninth Circuit has acknowledged that federal and state defendants defending a law may have serious differences of legal reasoning regarding why the law must be upheld, and one defendant's construction can be detrimental to the interest of a co-sovereign. *California ex. Rel. Lockyer*, 450 F.3d

at 444. While EPA obviously has an interest in defending its action in approving Montana's standards, it is Montana's standards ultimately at issue here. Montana must protect its sovereign interest and its right to establish and enforce its water quality standards. Montana has the primary burden of implementing its standards and would suffer significant regulatory uncertainty if its standards are not upheld. It is not clear now what EPA's position would be if the non-severability provisions are struck, and this uncertainty alone is sufficient to show the inadequacy of EPA's representation. *See Citizens for Balanced Use,* 647 F.3d at 898 (stating applicant's burden to show inadequate representation minimal and satisfied if shown the representation of its interests "may" be inadequate).

Under these circumstances, Montana is entitled to intervene as a matter of right to protect its distinct sovereign interests.

## II. Alternatively, Montana should be allowed Permissive Intervention under Rule 24(b)(2), Fed. R. Civ. P., because claims and defenses in this matter are based upon a statute it administers and a regulation made under this statute.

Alternatively, Montana should be allowed to intervene permissively as Rule 24(b)(2), Fed. R. Civ. P., describes exactly Montana's interest in this case:

> On timely motion, the court may permit a federal or state governmental officer or agency to intervene if a party's claim or defense is based on: (A) a statute or executive order administered by the officer or agency; or (B) any regulation, order, requirement, or agreement issued or made under the statute or executive order.

The challenged rule is a water quality standards regulation enacted and administered by DEQ and made pursuant to Sections 75-5-201, 301, 303, MCA. Montana, through DEQ, primarily implements its water quality standards through the administration of its discharge permitting program, as well as through its extensive work in the monitoring and assessment of state waters under Sections 303(d) and 305(b) of the Clean Water Act, 33 U.S.C. §§ 1313(d), 1315(b).

Should the Court conclude Montana is not entitled to intervene as of right, the Court should grant Montana permissive intervention under this subsection of the rule, in accordance with the clear intent of Rule 24(b)(2), Fed. R. Civ. P.

## **CONCLUSION**

The State of Montana is entitled to intervene as of right to defend its rules challenged herein. As a sovereign state with jurisdiction over its waters, its interest is separate from that of the Defendant EPA, and only full party status can protect Montana's right to appeal should that prove necessary. The case has just been filed, there is no prejudice, and Montana's intervention is unopposed. Alternatively, Montana should be granted intervention permissively under Rule 24(b)(2), Fed. R. Civ. P.

Respectfully submitted this 5th day of June, 2020.

STATE OF MONTANA
Montana Department of Environmental Quality

By: _____
       Kurt R. Moser
       Special Assistant Attorney General

## CERTIFICATE OF SERVICE

I hereby certify that I caused a true and accurate copy of the foregoing document to be mailed, first class postage paid to:

Jenny K. Harbine
Earthjustice Legal Defense Fund
313 East Main Street
Bozeman, MT  59715-6242

Ashley N. Bennett
NORTHWEST OFFICE OF
EARTHJUSTICE
810 Third Avenue, Suite 610
Seattle, WA 98104

Janette K. Brimmer
EARTHJUSTICE
705 Second Avenue, Suite 203
Seattle, WA  98104-1711

Alan D. Greenberg
Environmental Defense Section
Environmental and
Natural Resources Division
U.S. Department of Justice
999 18th Street, Suite 370
Denver, CO 80202

Kurt G. Alme
United States Attorney
District of Montana
901 Front Street, Suite 1100
Helena, MT  59626

Dated:   June 5, 2020

Kurt R. Moser
Special Assistant Attorney General
*Attorney for Applicant*
*Intervenor-Defendant State of Montana*

Montana's Brief in Support of Unopposed Motion to Intervene                                    11

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 7.1 (d)(2), I certify that this brief is printed with a proportionately spaced Times New Roman text typeface of 14 point; is double spaced, except for any footnotes and for quoted and indented material; and the word count calculated by Microsoft Word for Windows for this brief is 1,904 words, excluding caption, certificate of service, and certificate of compliance.

Kurt R. Moser
Special Assistant Attorney General

*Attorney for Applicant*
*Intervenor-Defendant State of Montana*