**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**GREAT FALLS DIVISION**

| | |
|---|---|
| UPPER MISSOURI WATERKEEPER, | |
| Plaintiff, | **CV-16-52-GF-BMM-JTJ** |
| | **CV-20-27-GF-BMM-JTJ** |
| vs. | |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY and ANDREW WHEELER, Administrator, United States Environmental Protection Agency, | **ORDER ON** **MOTIONS TO STAY** |
| Defendants, | |
| and | |
| STATE OF MONTANA DEPARTMENT OF ENVIRONMENTAL QUALITY, TREASURE STATE RESOURCES ASSOCIATION OF MONTANA, MONTANA LEAGUE OF CITIES AND TOWNS, and NATIONAL ASSOCIATION OF CLEAN WATER AGENCIES | |
| Defendant Intervenors. | |

**INTRODUCTION**

This case involves two consolidated legal controversies, *Upper Missouri Waterkeeper v. U.S. Envtl. Protection Agency, et al.*, Cause No. CV-16-52 (D. Mont. 2019) ("*Waterkeeper I*"), and *Upper Missouri Waterkeeper v. U.S. Envtl.*

*Protection Agency, et al.*, Cause No. CV-20-27 (D. Mont. 2020) ("*Waterkeeper II*").

This Order addresses pending Motions to Stay the Court's October 30, 2020 Consolidated Order (*Waterkeeper II*, Doc. 72) ("Consolidated Order") until resolution of appeals in *Waterkeeper I*. (*Waterkeeper II*, Docs. 79, 81, and 83). For reasons discussed below, the Court grants a stay of the rulemaking portion of the Consolidated Order, pending resolution of appeals of the 2019 Judgment (*Waterkeeper I*, Doc. 187).

## PROCEDURAL BACKGROUND

In *Waterkeeper I*, Plaintiff Upper Missouri Waterkeeper ("Waterkeeper") filed an Amended Complaint alleging that Defendants United States Environmental Protection Agency and Administrator Andrew Wheeler (collectively, "EPA") had violated the Clean Water Act ("CWA"). (*Waterkeeper I*, Doc. 130). The State of Montana Department of Environmental Quality ("DEQ"), Treasure State Resources Association of Montana ("Treasure State Resources"), Montana League of Cities and Towns ("MLCT"), and National Association of Clean Water Agencies ("NACWA") (collectively, "Intervenor-Defendants") moved to intervene. (*Id.*, Docs. 25, 27, 30, 41). All parties to *Waterkeeper I* filed a motion or cross-motion for summary judgment. (*Id.*, Docs. 148, 151, 155, 159, 161, 165).

2

The Court issued an Order on March 25, 2019, granting summary judgment, in part, in favor of Waterkeeper. (*Id.*, Doc. 177) ("2019 Summary Judgment Order"). The Court then directed the parties to provide briefing on the proper remedy. *Id.* The Court issued a Remedies Order on July 16, 2019. (*Id.*, Doc. 184) ("2019 Remedies Order"). The Court will refer to the 2019 Summary Judgment Order and 2019 Remedies Order collectively as the "2019 Orders." The Clerk of Court entered Judgment (*Id.*, Doc. 187) ("2019 Judgment") on September 20, 2019, in accordance with the terms of the 2019 Orders.

The Court has expressed in exhaustive detail the underlying facts and party positions in *Waterkeeper I*, but will provide an abbreviated recitation of the terms of the 2019 Orders. The Court determined that DEQ's Circular 12-B variance failed to comply with EPA regulations for variances, including the requirement to meet the "highest attainable condition" throughout the variance's term. (*Waterkeeper I*, Doc. 177). The Court further concluded that the failure of the Circular 12-B variance to include a schedule for attaining the protective water quality standards ("WQS") of Circular 12-A violated the CWA. *Id.* The Court required EPA and DEQ to undertake corrective action, by ordering a partial vacatur of the general variance timelines at issue. (*Id.*, Doc. 184 at 6). The Court carefully crafted its 2019 Remedies Order to avoid invalidating the entire general variance WQS package adopted by DEQ and EPA. *Id.* at 5. The Court instead

3

opted to vacate partially a small subsection of the general variance WQS—the portion conveying timelines. *Id.* The Court stayed its partial vacatur "until EPA *approves a replacement general variance*" that complies with the terms of the law. *Id.* at 6 (emphasis added). The Court provided DEQ with 120 days to complete the state rulemaking process, and gave EPA 90 days to complete its review, and approve or disapprove, of DEQ's proposal under 33 U.S.C. § 1313(c)(2). *Id.*

Upon entry of the 2019 Judgment, EPA moved to alter or amend under Fed. R. Civ. P. 59. (*Waterkeeper I*, Doc. 188). The Intervenor-Defendants filed Notices of Appeal of the 2019 Judgment. (*Id.*, Docs. 192, 195, 212, 215). NACWA and MLCT filed an expedited Motion to Stay the 2019 Judgment pending appeal. (*Id.*, Doc. 193). The Court issued an Order on November 5, 2019, denying the Motion to Stay Judgment pending appeal, citing EPA's then-undetermined Motion to Alter or Amend the 2019 Judgment. (*Id.*, Doc. 206). The Court later denied EPA's Rule 59 Motion. (*Id.*, Doc. 211). EPA filed a Notice of Appeal (*Id.*, Doc. 213) of the 2019 Judgment and the Order denying the Motion to Alter or Amend (*Id.*, Doc. 211). No party moved to stay the rulemaking ordered in the 2019 Judgment following the Court's denial of EPA's Rule 59 Motion.

While EPA and Intervenor-Defendants' appeals of the 2019 Judgment remained pending, DEQ conducted rulemaking as required by this Court's 2019 Remedies Order. DEQ submitted its revisions to the general variance timelines to

4

EPA for approval on November 26, 2019. DEQ previously had submitted two non-severability provisions, A.R.M. §§ 17.30.619(2) and 17.30.715(4) (collectively, the "Poison Pill"), to EPA for approval in 2015 as part of Montana's WQS package submission. The Poison Pill was intended as a self-executing measure that would void the State's base numeric nutrient WQS upon occurrence of one of three triggering events. *See* A.R.M. §§ 17.30.619(2) and 17.30.715(4). Voidance of the base numeric nutrient WQS automatically would return Montana to less restrictive narrative nutrient criteria. *Id*. EPA approved other aspects of Montana's WQS package in 2015, but declined to act on the Poison Pill at that time. EPA deemed it "inadvisable for [Montana] to include such a provision" in its proposed WQS package. Rationale for the EPA's Action on Montana's New and Revised Water Quality Standards, EPA (Feb. 26, 2015), *Waterkeeper II*, Doc. 19 at 41.

DEQ did not resubmit the Poison Pill in its 2019 proposal to EPA as part of its compliance with the Court's 2019 Judgment and Orders. EPA disapproved DEQ's submission on February 24, 2020. Letter from Gregory Sopkin, EPA Regional Administrator, to Shaun McGrath, DEQ Director (Feb. 24, 2020), *Waterkeeper II*, Doc. 18 at 5 ("2020 EPA Decision and Rationale Letter"). EPA justified its disapproval decision by citing a lack of compliance with this Court's 2019 Orders, but failed to provide DEQ with specific recommendations to cure its

defects as required by CWA mandates. *See id.* at 12–13; 33 U.S.C. § 1313(c)(3), (4).

EPA did approve—unprompted—the Poison Pill, insisting that the Poison Pill "was lawful and permissible and that the [EPA] should have acted on these two provisions [in 2015]." 2020 EPA Decision and Rationale Letter, *Waterkeeper II*, Doc. 18 at 15. DEQ viewed EPA's action of disapproving its 2019 submission, and approving the Poison Pill, as triggering the Poison Pill's application. *Waterkeeper II*, Summ. J. Hr'g Tr., 30:20–23, Sept. 24, 2020, Doc. 71. Triggering of the Poison Pill translated into invalidation of Montana's base numeric nutrient WQS and general variance WQS, and substitution of the more relaxed narrative nutrient WQS criteria. *Id.*, 30:23–31:11. Waterkeeper filed an action with this Court challenging EPA's approval of the Poison Pill. (*Waterkeeper II*, Doc. 1). The parties to *Waterkeeper II* filed competing summary judgment motions. (*Waterkeeper II*, Docs. 12, 35, 39, 43, and 63).

The Court reviewed the record and the parties' summary judgment motions, and opted to consolidate *Waterkeeper II* with its predecessor case, *Waterkeeper I*, given the two cases' relatedness and the pending matters in each. Consolidated Order, *Waterkeeper II*, Doc. 72 at 18. The Court made clear that the Consolidated Order "serve[d] primarily to clarify the existing state of the case" as now consolidated. *Id.* at 19. As EPA had not yet "approve[d] a replacement general

6

variance [timeline] in accordance with the Court's [2019 Summary Judgment] Order," the Court determined that its stay of the partial vacatur of the general variance timelines in *Waterkeeper I* remained in effect until EPA complied with the terms of the Court's 2019 Orders and CWA procedural mandates. *Id.* at 16–17.

The Court reset its schedule from the 2019 Remedies Order to run from the date of the Consolidated Order, requiring the parties to engage in a new round of rulemaking and review to comply with the Court's 2019 Orders. *Id.* The Court deferred ruling on the summary judgment motions in the Poison Pill challenge in *Waterkeeper II*. *Id.* at 19. The Court made clear, in the interim, that the 2017 as-amended general variance timelines remained in place given the Court's stay of the partial vacatur—originally prescribed in the 2019 Remedies Order and reinforced in the Consolidated Order. *Id.*

Intervenor-Defendants filed respective Motions to Stay the Consolidated Order. (*Waterkeeper II*, Docs. 79, 81, 83). NACWA and MLCT filed a joint Motion to Stay. (*Waterkeeper II*, Doc. 79). They argue that the pending appeal in *Waterkeeper I* divested this Court of its jurisdiction, and, therefore, this Court could not order the relief directed in the Consolidated Order. *Id.* at 9–10. NACWA and MLCT urge the Court to stay the Consolidated Order until such time as the Ninth Circuit resolves the appeals of the 2019 Judgment in *Waterkeeper I*. *Id.* at 12–18. Treasure State Resources adopts the arguments of NACWA and MLCT,

7

and writes separately to assert its belief that the Court inappropriately consolidated *Waterkeeper I* and *Waterkeeper II*, and that the Consolidated Order conflicts with the party presentation doctrine and principles of comity. (*Waterkeeper II*, Doc. 84 at 6–8). DEQ's Motion to Stay asks the Court to stay the rulemaking portion of the Consolidated Order until such time as its appeal of the 2019 Judgment becomes resolved. (*Waterkeeper II*, Doc. 82 at 2).

For the reasons stated below, the Court will stay the rulemaking portion of the Consolidated Order until the Ninth Circuit has ruled on the parties' appeals of the 2019 Judgment in *Waterkeeper I*. The stay of partial vacatur first ordered in the 2019 Remedies Order, and reiterated in the Consolidated Order, remains in effect. The 2017 as-amended general variance timelines vacated by the 2019 Remedies Order remain in place until such time as EPA "approves a replacement general variance [timeline] in accordance with the Court's [2019 Summary Judgment] Order." Consolidated Order, *Waterkeeper II*, Doc. 72 at 16–17.

## DISCUSSION

### I.    Stay Pending Appeal

DEQ asks this Court to stay the rulemaking portion of the Consolidated Order, pending resolution of its appeal of the 2019 Judgment. (*Waterkeeper II*, Doc. 82 at 2). A federal court may, in its discretion, stay the enforcement of a judgment pending the outcome of an appeal. *Nken v. Holder*, 556 U.S. 418, 421

(2009); *Doe #1 v. Trump*, 957 F.3d 1050, 1058 (9th Cir. 2020). The following

factors regulate the issuance of a stay: (1) whether the stay applicant has made a

strong showing of likelihood of success on the merits; (2) whether irreparable

injury will befall the applicant in the absence of a stay; (3) whether stay issuance

will substantially injure the other interested parties; and (4) whether public interest

supports stay issuance. *Doe #1*, 957 F.3d at 1058. The court first should consider

the applicant's showing on irreparable harm, and then discuss the likelihood of

success on the merits under the sliding scale approach. *Id.* (citing *Al Otro Lado v.

Wolf*, 952 F.3d 999, 1007 (9th Cir. 2020)).

      The Court first considers the primary question of whether DEQ has shown

that it will suffer irreparable injury in the absence of a stay of the rulemaking

portion of the Consolidated Order. DEQ already has attempted to revise its general

variance timelines to comply with this Court's 2019 Orders and Judgment. EPA's

Poison Pill approval torpedoed this effort. Rulemaking requires significant agency

time and other resources to complete. (*Waterkeeper II*, Doc. 82 at 10). DEQ's

appeal of the 2019 Judgment sits fully briefed and awaits oral argument. *Id.* at 15.

Until such time as the Ninth Circuit has resolved the appeals of this Court's 2019

Judgment, the rulemaking reiterated in the Consolidated Order would cause

unnecessary hardship to DEQ.

The Court determines that DEQ has satisfied the "likelihood of success" prong of the stay analysis. A stay applicant need not show that "it is more likely than not that they will win on the merits." *Lair v. Bullock*, 697 F.3d 1200, 1204 (9th Cir. 2012). Instead, the applicant must show that, at a minimum, it submits a "substantial case for relief on the merits." *Id.* DEQ indeed has not shown that its success on the merits is more likely than not, but it has shown the requisite substantiality of its case on appeal. The Court remains confident in the reasoning of the 2019 Judgment. The Court recognizes the complexity of the issues presented on appeal, however, and determines that DEQ has met its burden for this factor.

The final two considerations for stay issuance ask whether stay issuance will substantially injure the other interested parties, and whether public interest supports stay issuance. These two factors are related under the present circumstances and the Court considers them together. The Court determines that staying the rulemaking as reiterated by the Consolidated Order will not substantially injure Waterkeeper. Although the public's interest in protection of the "chemical, physical, and biological integrity of the Nation's waters" weighs against granting the motions to stay, the Court determines that this risk to the public interest and to Waterkeeper's position stands ameliorated by the fact that the 2017 as-amended general variance timelines remain in effect until the Court lifts the stay of the partial vacatur. (*Waterkeeper II*, Doc. 82 at 14 (citing Consolidated

10

Order, *Waterkeeper II*, at 15)). DEQ has assured the Court that the pending appeals of the 2019 Judgment "are nearing resolution," and that "a protracted period of stay" of the rulemaking portion of the Consolidated Order would be unlikely. (*Waterkeeper II*, Doc. 82 at 15). The Court takes DEQ at its word that minimal harm will come to the public interest or Waterkeeper's position as a result of issuance of the stay of rulemaking.

DEQ has met its burden of establishing the necessity of a stay of the portion of the Consolidated Order directing DEQ and EPA to comply with the terms of the 2019 Orders. The Court stays the rulemaking portion of the Consolidated Order until the Ninth Circuit resolves the pending appeals of the 2019 Judgment in *Waterkeeper I.*

## II.   Divestiture

NACWA, MLCT, and Treasure State Resources each argue that the parties filing an appeal of the 2019 Judgment divested the Court of its jurisdiction. (*Waterkeeper II*, Doc. 80 at 12). When the Ninth Circuit "docketed the appeals on February 18, 2020," these Intervenor-Defendants argue that this Court was "effectively divest[ed] . . . of jurisdiction over the issues appealed." *Id.* at 13. The

Court disagrees that it exceeded its jurisdiction by issuance of the Consolidated Order.

The rule divesting lower courts of jurisdiction over aspects of a case involved in an appeal exists as "judge-made doctrine designed to avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time." *In re Padilla*, 222 F.3d 1184, 1190 (9th Cir. 2000). Divestiture is not absolute. *Id.* A district court retains jurisdiction over a continuing course of conduct in order to preserve the status quo. *S.E.C. v. Am. Capital Inv., Inc.*, 98 F.3d 1133, 1146 (9th Cir. 1996) *abrogated on other grounds by Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (citing *Pyrodyne Corp. v. Pyrotronics Corp.*, 847 F.2d 1398, 1403 (9th Cir. 1988)). A district court cannot adjudicate the substantial rights involved in the appeal. *Pyrodyne Corp.*, 847 F.2d at 1403. Where the parties create new facts, however, the maintenance of the status quo may require new action by the Court. *Hoffman for and on Behalf of N.L.R.B. v. Beer Drivers and Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir. 1976). Further, "although the Court does not have jurisdiction to decide the merits of the issue that is currently on appeal, 'a district court has continuing jurisdiction in support of its judgment, and until the judgment has been properly stayed or superseded, the district court may enforce it.'" *Oceana, Inc. v. Ross*, 359 F.Supp.3d 821, 827 (N.D. Cal. 2019).

EPA's approval of the Poison Pill on its own accord created new facts that would have altered substantially the status quo between the parties while appeals of the 2019 Judgment remained pending. EPA appears to have attempted to use the 2019 Remedies Order's partial vacatur of the general variance timelines—although stayed by the Court—to invalidate entirely Montana's base numeric nutrient WQS and general variance WQS. Consolidated Order, *Waterkeeper II*, Doc. 72 at 16. This action, if permitted to proceed in spite of the Court's stay of partial vacatur, effectively could moot the 2019 Judgment and pending appeals. EPA's failure to comply with the Court's 2019 Judgment and its contemporaneous approval of the Poison Pill, together with the parties' subsequent conduct, made an Order clarifying the status of the cases necessary to preserve the status quo. *See* Consolidated Order, *Waterkeeper II*, Doc. 72 at 19.

Issuance of the Consolidated Order represented the Court's method of maintaining the status quo among the parties. The Court deemed it imprudent at that time to resolve the conflict over the Poison Pill approval in *Waterkeeper II* where that decision would impact the parties' appeals in *Waterkeeper I*, and deferred ruling on the Poison Pill. *Id.* To avoid confusion of the issues and unnecessary repetition, the Court consolidated *Waterkeeper I* and *Waterkeeper II*. *Id.* To maintain the status quo among the parties in *Waterkeeper I*, the Court determined that the stay of partial vacatur remained in effect, and ordered EPA and

13

DEQ to engage in rulemaking in compliance with the 2019 Judgment and Orders. *See id.* Notably, this Court ordered the same rulemaking in the 2019 Remedies Order, and, following the Court's denial of EPA's motion to alter or amend the 2019 Judgment, no party pursued a stay to relieve themselves of the rulemaking requirement pending appeals.

### III.   Consolidation, Party Presentation Doctrine, and Comity

Treasure State Resources writes separately to assert that *Waterkeeper I* and *Waterkeeper II* did not meet the standard for consolidation under Fed. R. Civ. P. 42(c). As dictated in the Consolidated Order, the two related cases involved the same underlying facts, law, and parties, absent NACWA, who has become a party to *Waterkeeper II* by way of consolidation. Consolidated Order, *Waterkeeper II*, Doc. 72 at 18. Despite Treasure State Resources's creative attempts at decontextualizing the Poison Pill issue in *Waterkeeper I* from the overarching relatedness it shares with *Waterkeeper II*, this Court determines its *sua sponte* consolidation falls within its discretion and the spirit of Fed. R. Civ. P. 42(c).

Treasure State Resources also questions whether the Consolidated Order violated the party presentation doctrine and principles of comity. The Court believes that it addressed these concerns in its divestiture determination. The Court issued the Consolidated Order as a case management measure to preserve the status quo pending appeal. The Court did not grant relief outside that requested by

14

the parties. The Court instead consolidated *Waterkeeper I* and *Waterkeeper II* and reimposed the same terms already exacted in the 2019 Judgment, rather than rule separately on the Poison Pill and risk confusing the issues among the parties and adjudicating those rights involved in the pending appeals.

## CONCLUSION

A stay of the rulemaking portion of the Consolidated Order proves warranted in the present circumstances. The Court stays the segment of the Consolidated Order directing the parties to conduct rulemaking in accordance with the 2019 Orders. The Court stays the rulemaking portion of the Consolidated Order until the Ninth Circuit has resolved the pending appeals of the 2019 Judgment in *Waterkeeper I*. The other aspects of the Consolidated Order, including those portions consolidating *Waterkeeper I* and *Waterkeeper II*, and clarifying the status of the Court's stay of the partial vacatur as in-effect, remain unchanged.

## ORDER

Accordingly, **IT IS ORDERED**:

1.      DEQ's Motion to Stay Rulemaking Pending Appeal (*Waterkeeper I*, Doc. 233; *Waterkeeper II*, Doc. 81) is **GRANTED**.

2.      NACWA and MLCT's Motion to Stay Consolidated Order Pending Appeal (*Waterkeeper I*, Doc. 231; *Waterkeeper II*, Doc. 79) is **GRANTED, IN PART,** and **DENIED, IN PART.** The motion is denied to the extent it asks the

Court to grant a stay of the Consolidated Order in its entirety. The stay issued by this Order affects only the rulemaking portion of the Consolidated Order, and remains in effect only until the Ninth Circuit has ruled upon the pending appeals of the 2019 Judgment in *Waterkeeper I*.

      3.     Treasure State Resources's Motion to Stay Consolidated Order (*Waterkeeper I*, Doc. 235; *Waterkeeper II*, Doc. 84) is **GRANTED, IN PART,** and **DENIED, IN PART.** The motion is denied to the extent it asks the Court to grant a stay pending appeal of the Consolidated Order itself. The stay of the rulemaking portion of the Consolidated Order remains in effect only until the Ninth Circuit has ruled upon the pending appeals of the 2019 Judgment in *Waterkeeper I*.

      Dated this 9th day of February, 2021.

Brian Morris, Chief District Judge
United States District Court

16